UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | Criminal Case No. 23 CR 54 (TSC) |
| : | |
| DAMION BYRD, : | |
| : | |
| Defendant. : | |

## GOVERNMENT'S SUPPLEMENTAL SENTENCING MEMORANDUM

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, hereby submits its memorandum in aid of sentencing. For the reasons herein, the United States requests that the Court sentence the defendant to a period of **121 months of incarceration** and 3 years of supervised release. The government argues, and the presentence report concurs that 2-level obstruction enhancement applies in the defendant's guidelines.

## Argument

### I.    THE DEFENDANT OBSTRUCTED JUSTICE

The defendant's jail calls illustrate how he was obstructing justice. First, he was directing one individual to speak to the identification witness and deter her from cooperating with law enforcement and second, directing another individual to remove firearms from his apartment. In order to determine whether the defendant is obstructing justice the defendant has to act with the intent to obstruct justice and "consciously act with the purpose of obstructing justice." *United States v. Monroe*, 900 F.2d 1370, 1376 (D.C. Cir. 1993) (quoting *United States v. Thompson*, 962 F.2d 1069, 1071 (D.C. Cir. 1992). Furthermore, "When threatening a witness is found to be inherently obstructive, and the defendant fails

1

to proffer sufficient evidence of a different intent, a court need look no further because the conduct itself creates the presumed inference or obstructive intent. When the conduct is indirect or ambiguous, a court must make a supported finding that the defendant acted with the intent to obstruct justice." *United States v. Henry,* 557 F.3d 642, 648 (D.C. Cir. 2009). Furthermore, when deciding obstructive conduct, courts have held that an intent to deter cooperation with the government is sufficient and that the district court may draw inferences from context. *United States v. Shoulberg*, 895 F.2d 882, 885 (2d. Cir. 1990).

### A. Identification Witness

As with any violent crime case, one of the primary tasks of law enforcement is to identify the suspect. The defendant was eventually identified with the help of the identification witness. The witness saw a new report of the defendant and sent in a tip to police where she stated that "I believe I know who is the Man posing as cop shoots 2 people; DC police search for suspect. I also believe he the same person responsible for the robberies reported on the news at the Avenue Man. I hope I am wrong but his name is Damion Byrd." This witness was crucial, and had this matter gone to trial, the government would have called the witness to testify as she identified the defendant from a surveillance still shot from the McDonald's robbery.

The shooting incident that the identification witness was referring to occurred on December 20, 2022 where an individual, posing as a police officer, went to 6023 Clay Street, NE, Washington, D.C. and shot two individuals in their lower extremities. A review of the surveillance footage from the location showed the suspect had a braided hairstyle underneath a knit hat similar to the defendant and


like the defendant, had a dark marking on his right hand.[1] **(Figure 1).** After the defendant was arrested for the instant offenses he made indirect statements about the shooting and stated that he "did not go there to kill anybody," and that "pain and hurt" were what led him to be at 6023 Clay Street, NE due the murder of his cousin.



**Figure 1**

It is in this context that the defendant wanted someone to go speak to the identification witness. On his January 21st jail call the caller asks "Who telling on you? …That is what I am trying to figure out?" The defendant responds that "I want someone to go up there and talk to her bro…" and that "I

---

[1] The shooting was referenced on page 2, footnote one of the plea agreement. A DNA analysis from a May 2024 report where two cartridge casings were analyzed from the December 20, 2023 shooting had the defendant excluded as a contributor from one casing and for the second casing it was "6.62 times more likely if the DNA originated from three unknown, unrelated individuals than if the DNA originated from Damion Byrd and two unknown, unrelated individuals." A draft CAST analysis has the defendant's phone, 667-227-1645 traveling to the vicinity of the crime scene at 6023 Clay

3

don't know why she is doing shit like this.." and that "I want someone to go over there be like…" The defendant was cut off, but what he is conveying is that he does not want the identification witness to cooperate with law enforcement and that he wants the individual he is speaking with to unlawfully influence the witness.

### B. Firearms

The presence of additional firearms and ammunition in the defendant's apartment is material to this case and the defendant on a jail call, was asking the caller to remove the firearms from his apartment. The defendant's possession and familiarity with firearms and ammunition is evidence, that "would tend to influence or affect the issue under determination." *See* 3C1.1, Application Note 6. Specifically, the defendant's possession and familiarity with firearms and ammunition would bolster the government argument that the defendant was using a real firearm when committing these robberies had this case gone to trial. Surveillance footage reveals that the defendant was using a firearm with a blue trigger. **(Figure 2).**

---

Street, NE, Washington, D.C on the day of the shooting.



**Figure 2**

The government did not recover a firearm a blue trigger in this case, however, it did recover a Glock 23 without a blue trigger that is similar in appearance from the defendant's apartment. **(Figure 3).**



**Figure 3**

## II. Conclusion

For the foregoing reasons, the government recommends that the Court apply the +2 obstruction enhancement and sentence the defendant to a **121 months of incarceration** to be followed by a term of 3 years of supervised release. The government submits that a sentence of **121 months of incarceration** is an appropriate sentence, which serves to protect the community, punish the defendant for his criminal conduct, and deters others from committing similar offenses, while also affording the defendant an opportunity at rehabilitation. The government submits that a sentence of **121 months of incarceration** serves the interests of justice and appropriately balances the sentencing factors under 18 U.S.C. § 3553(a).

Respectfully Submitted,
MATTHEW GRAVES
UNITED STATES ATTORNEY

BY:      /s/

SHEHZAD AKHTAR
D.C. Bar No. 493635
Assistant United States Attorneys
United States Attorney's Office
601 D Street, N.W.
Washington, D.C. 20530
Telephone: (202) 252-7498
E-mail: Shehzad.Akhtar@usdoj.gov

I HEREBY CERTIFY that I caused a copy of this pleading to be served upon defense counsel Mary Petras, via the electronic case filing system, this 24th day of July, 2024.

    /s/
SHEHZAD AKHTAR
Assistant United States Attorney